## 75793. WALLACE v. THE STATE.
(371 SE2d 914)

PER CURIAM.

Defendant was indicted for the offenses of murder, aggravated assault, theft of a motor vehicle and driving under the influence of alcohol.[1] The evidence at trial on June 1, 2, 3 and 4, 1987, was as follows:

Sometime around midnight on May 16, 1979, Officers Tom Rowry and Mike Cook of the Union Point, Georgia Police Department began following defendant in their patrol car after they observed defendant making an unusual "wide turn" near "downtown Union Point." After the officers observed defendant's car "run off the road several times and [cross] over into the opposite lane several times," they "turned on the blue lights." However, defendant did not stop his vehicle until he "went approximately a quarter of a mile. . . ." After the stop, Officer Cook smelled alcohol on defendant's breath and administered a field test which indicated that defendant had been drinking alcohol. The officers then transported defendant "to the Union Point City Hall for [an] intoximeter test that would give . . . the level of alcohol . . . which [defendant] had consumed."

"At City Hall," Officer Rowry administered a breath test which indicated that defendant had an .11 percent blood alcohol content. Defendant was charged with "DUI" and advised that he would be held in police custody "for just a minimum of four hours, or until he could make bond." Defendant then asked Officer Cook "if [they] could give him a break on the DUI." Officer Cook advised defendant that "[they] did not give breaks on DUI tests when anybody went over the legal limit of alcohol." At this point, a struggle ensued. Officer Rowry received a fatal gunshot wound and Officer Cook was shot in the abdomen. Defendant fled in a Union Point patrol car and was

---

[1] Defendant was previously convicted in February 1980 for murder, aggravated assault, motor vehicle theft and driving under the influence of alcohol and was sentenced to death for the murder and 28 consecutive years in confinement for the other offenses. The Supreme Court of Georgia affirmed defendant's convictions and sentences in *Wallace v. State*, 248 Ga. 255 (282 SE2d 325), and, upon defendant's writ of habeas corpus, "[t]he United States District Court for the Middle District of Georgia, 581 FSupp. 1471, Owens, J., granted the writ, finding constitutional infirmities in [the] prosecutor's closing argument, but denied it on [the] remaining grounds, and appeals were taken. The [United States] Court of Appeals, Albert J. Henderson, Circuit Judge, [reversed and remanded] holding that [the] evidence was insufficient to sustain [the] finding that defendant was competent to stand trial, and thus, defendant was denied due process of law." *Wallace v. Kemp*, 757 F2d 1102 (11th Cir. 1985).

later apprehended in Atlanta, Georgia. The jury found defendant not guilty of murder, not guilty of aggravated assault, guilty of motor vehicle theft and guilty of driving under the influence of alcohol. Defendant was then sentenced to serve eight consecutive years. This appeal followed. *Held*:

1. Defendant first contends the trial court erred in charging the jury on motor vehicle theft: " 'It shall be unlawful for anyone to steal a motor vehicle.' " Defendant argues that this charge on motor vehicle theft was incomplete as the crime comprises the intention of depriving the owner of the motor vehicle and that this omission was harmful because his defense was that he took the Union Point police car in order to escape further assault from Union Point police officers, not with the intention of depriving the owner of its property. See *Martin v. State*, 143 Ga. App. 875 (1) (240 SE2d 231).

Earlier in the jury charge, the trial court fully instructed the jury on the necessity of finding intent, the element to which this defense pertains. Further, defendant did not request the trial court to charge this defense in detail and, in the absence of such a request, "the court had no duty to do so. *Darby v. State*, 79 Ga. 63 (8) (3 SE 663); *Hayden v. State*, 69 Ga. 731 (3); *Burgess v. State*, 210 Ga. 91 (78 SE2d 33)." *Wilson v. State*, 124 Ga. App. 403 (183 SE2d 926). Consequently, the trial court "fulfilled its duty to 'charge upon the general principles covering the facts of the case' . . . *Spivey v. State*, 59 Ga. App. 380, 382 (1 SE2d 60)." *Wilson v. State*, 124 Ga. App. 403, supra. Considering the charge as a whole, we find no error which requires reversal. *August v. State*, 180 Ga. App. 510 (3) (349 SE2d 532). Consequently, defendant's conviction of the offense of theft of a motor vehicle is affirmed.

2. In his second enumeration of error, defendant contends the trial court erred in failing to charge the jury that it could recommend that defendant be punished as for a misdemeanor. "This enumeration is totally without merit. The trial judge now sets the punishment and determines the sentence. Code Ann. § 27-2301, as amended (Ga. L. 1974, p. 352) [now OCGA § 17-9-2]; Code Ann. § 27-2503 (a) (Ga. L. 1974, pp. 352, 357) [now OCGA § 17-10-2]. Therefore, the court was not required to charge the jury that portion of § 26-1813[, repealed by Ga. L. 1981, p. 1576,] which permits the jury to recommend misdemeanor punishment. See *Stanley v. State*, 136 Ga. App. 385 (221 SE2d 242) (1975). *Winslow v. State*, 135 Ga. App. 773 (219 SE2d 21) (1975)." *Favors v. State*, 145 Ga. App. 864, 868 (5) (244 SE2d 902).

3. Next, defendant contends the trial court's charge to the jury that "[a] person shall not drive or be in actual physical control of any moving vehicle while under the influence of alcohol" was harmfully incomplete, because it did not inform the jury that being under the influence of alcohol meant that consumption of alcohol had rendered

him a less safe driver. We agree. "[T]he trial court should have so defined the term, 'under the influence.' See *Turner v. State*, 95 Ga. App. 157, 158 (97 SE2d 348) (1957). See also *Smitherman v. State*, 157 Ga. App. 526 (278 SE2d 107) (1981); and *Anderson v. State*, 226 Ga. 35 (172 SE2d 424) (1970)." *Taylor v. State*, 184 Ga. App. 368, 369 (2) (361 SE2d 667).

4. In his fifth enumeration of error, defendant contends the trial court erred in admitting evidence of the results of his intoximeter test because the State failed to establish a proper foundation by showing "that the [intoximeter] machine had . . . been properly checked by the Department of Public Safety" and that Officer Rowry "had a permit to operate the [intoximeter]."

At the time defendant was tested, "Rule 570-9-.06 (6) of the rules of the Department of Public Safety provided in part that: 'All breath tests other than the original screening test will be conducted on a photo-electric intoximeter or breath analyzer of a design specifically approved by the Director, State Crime Laboratory.' " *Clarke v. State*, 170 Ga. App. 852, 853 (319 SE2d 16). Further, these rules required that a person operating the approved intoximeter machine be certified by the State to operate it. See *Smitherman v. State*, 153 Ga. App. 322 (265 SE2d 119).

After reviewing the record, we conclude that the State did lay a foundation sufficient to support the admission of the test results, since there was proof that both the machine and the operator were certified by the State. Officer Cook testified to the effect that the machine used to perform the test was a "federal [photo] electric intoximeter" and that he believed there was a permit for the machine from the Department of Public Safety; that Officer Rowry had recently been to intoximeter school and had "a current certificate" to run the intoximeter; that he observed Rowry putting an ampule into the machine, checking the ampules on that particular machine, checking and screening the galvanometer, and bringing the galvanometer back to the null point of zero. The testimony that Rowry was certified at that time to perform tests on the machine upon which appellant was tested was sufficient to prove that the machine used for the test was an approved machine. "Since the director issued the permit for the operation of this particular machine, it may be inferred that its design was specifically approved by him. Accordingly, the results of the test were admissible. [Cits.]" *Clarke v. State*, supra at 853. See also *Stewart v. State*, 165 Ga. App. 62, 63 (299 SE2d 134) (1983). The trial court did not err in admitting the evidence.

5. In his sixth enumeration of error, defendant contends the evidence was insufficient to support his conviction for driving under the influence of alcohol and, in this regard, defendant argues in his fourth enumeration of error that the trial court erred in failing to grant his

motion for directed verdict of acquittal. We do not agree. The evidence, showing that defendant made an unusual "wide turn" in the road, was observed to "run off the road several times and [cross] over into the opposite lane several times," failed to immediately stop his vehicle when summoned by police officers, that defendant smelled of alcohol at the time he was stopped and that defendant failed the field test for the consumption of alcohol, was sufficient to enable a rational trier of fact to find defendant guilty beyond a reasonable doubt of driving while under the influence of alcohol to the extent that he was a less safe driver. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560); *Collins v. State*, 177 Ga. App. 758, 759 (2) (341 SE2d 288). For these reasons, the trial court did not err in denying defendant's motion for directed verdict of acquittal. *Humphrey v. State*, 252 Ga. App. 525, 526 (1) (314 SE2d 436).

*Judgment affirmed in part and reversed in part. Birdsong, C. J., Pope and Benham, JJ., concur. Deen, P. J., McMurray, P. J., Banke, P. J., Carley, Sognier and Beasley, JJ., concur in part and dissent in part.*

DEEN, Presiding Judge, concurring in part and dissenting in part.

While concurring fully with Divisions 1, 2, 4, and 5 of the per curiam opinion, I must dissent from Division 3. Under the facts of this case, it was unnecessary to define "under the influence" as meaning that Wallace was a less safe driver because of his alcohol consumption.

The trial court instructed the jury that "[a] person shall not drive or be in actual physical control of any moving vehicle while under the influence of alcohol." The trial court also charged the jury that if chemical analysis of a person's blood shows that "there was at that time 0.10% or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of alcohol." Wallace's blood alcohol content was shown to be .11 percent, and the trial court's instructions on driving under the influence thus were exactly adjusted to the evidence.

The per curiam opinion misplaces its reliance upon *Taylor v. State*, 184 Ga. App. 368, 369 (2) (361 SE2d 667) (1987), and the cases cited therein, because it does not appear that any of those cases involved a situation where a chemical analysis revealed the driver's blood alcohol content to be at a level where one is presumed by law to be "under the influence." Where the State obtains no chemical analysis of the driver's blood, or one that indicates a blood alcohol content of less than the presumptive level, a definition of "under the influence" as meaning "less safe" would be necessary, but no such need exists where the State's evidence travels on the unrebutted presumption of being "under the influence" arising by virtue of a certain blood

alcohol content.

The appellant's convictions should be affirmed entirely.

I am authorized to state that Judge Beasley joins in this opinion.

McMurray, Presiding Judge, concurring in part and dissenting in part.

I fully concur in all that is said in Divisions 1, 2, 3 and 5 of the majority opinion, and the judgment. However, I respectfully dissent with regard to Division 4 as I do not agree that the trial court properly admitted the results of defendant's intoximeter test.

In the case sub judice, Officer Cook testified that Officer Rowry was "certified" to operate the "machine" that was used to test defendant's breath and that "there was a certificate with Officer Rowry's name on the wall . . . where we ran the intoximeter." However, Officer Cook failed to testify that the certificate was issued by the Department of Public Safety or that Officer Rowry was certified by the State to operate the intoximeter machine. In fact, on cross-examination Officer Cook affirmed that he did not "know if [the intoximeter machine] had a permit. . . ." This testimony was insufficient to establish a proper foundation for introduction into evidence of the results of defendant's breath test. See *Willoughby v. State*, 153 Ga. App. 434, 435 (1) (265 SE2d 352). Compare *Stewart v. State*, 165 Ga. App. 62, 63 (2, 3) (299 SE2d 134).

I am authorized to state that Presiding Judge Banke, Judge Carley and Judge Sognier join in this opinion.

DECIDED JULY 15, 1988 —
REHEARING DENIED JULY 28, 1988 ▪

*Robert E. Surrency, H. Samuel Atkins, Jr.*, for appellant.
*Joseph H. Briley, District Attorney*, for appellee.